UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Sung Yong Kim,<br><br>                        Plaintiff,<br><br>-against-<br><br>Equifax Information Services LLC,<br><br>                        Defendant. | Civil Action<br>Case No.: 1:25-cv-07179<br><br>**COMPLAINT** |

Plaintiff Sung Yong Kim ("Plaintiff"), by and through his attorneys, Petroff Amshen LLP, as and for his complaint against Defendant Equifax Information Services LLC ("Equifax" or "Defendant"), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1. Plaintiff brings this action for monetary damages, equitable relief, and attorneys' fees and costs against Defendant, arising from its willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. ("FCRA"), and its implementing Regulation V, 12 C.F.R. Part 1022.

2. This action arises from Defendant's egregious and persistent failures to comply with federal consumer protection laws following the theft of Plaintiff's identity, which resulted in the fraudulent creation of two separate student loans in Plaintiff's name ("the Fraudulent Loans"). Despite Plaintiff's diligent efforts to report the identity theft and dispute the inaccurate information associated with the Fraudulent Loans, Equifax failed to conduct a reasonable investigation, failed to correct or delete the inaccurate information, and, failed to block the reporting of information resulting from identity theft.

1

3. Congress enacted the FCRA to ensure that consumer reporting agencies ("CRAs") and the furnishers of information to the CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy and to the accuracy of information maintained and disseminated about them. 15 U.S.C § 1681(a)(4). The FCRA imposes strict duties on CRAs to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports and to conduct reasonable reinvestigations of disputed information. 15 U.S.C. §§ 1681e(b), 1681i. The FCRA also mandates that CRAs block the reporting of information identified by a consumer as resulting from identity theft upon receipt of proper notification. 15 U.S.C. § 1681c-2.

4. Defendant's willful and/or negligent disregard for its statutory obligations has directly and proximately caused Plaintiff to suffer significant harm, including damage to his creditworthiness and reputation, the denial of credit, substantial emotional distress, and the incurrence of financial burdens, including attorneys' fees and costs, to rectify Defendant's errors and protect his rights.

**PARTIES**

5. Plaintiff is an individual resident of the State of New York residing at 2600 Adam Clayton Powell Jr. Boulevard, Apt. 7C, New York, New York 10039. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. Equifax is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" that compiles and maintains files on consumers on a nationwide basis, as defined by the FCRA, 15 U.S.C. §§ 1681a(f) and 1681a(p).

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1331, as Plaintiff's claims arise under federal law.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the harm suffered by Plaintiff.

## STATEMENT OF FACTS

### A. The Genesis of the Fraudulent Account.

9. In May 2025, Plaintiff discovered that he had become the victim of a deeply disturbing fraud after identifying two suspicious student loans on his credit report, both serviced by the U.S. Department of Education.

10. Upon further investigation, Plaintiff learned that these Fraudulent Loans were allegedly originated in 1991 and 1995 and linked to New York University ("NYU"), an institution Plaintiff has never applied to, attended, or had any affiliation with.

11. During 1991, Plaintiff was completing his final year of high school and simultaneously beginning his freshman year at Polytechnic University of Long Island, a separate institution that, at the time, had no relationship with NYU. Plaintiff never submitted any loan applications in connection with NYU and never authorized any person or entity to do so on his behalf.

12. The circumstances surrounding the loan that originated in 1995 are even more disturbing. Plaintiff had dropped out of Polytechnic University in 1993 and has not attended any educational institution since. It is inconceivable that a student loan could be legitimately issued to

someone who was no longer enrolled in school, particularly at an institution they never applied to or attended.

13. Plaintiff never completed a Free Application for Federal Student Aid ("FAFSA"), never received student disclosures, and never signed any promissory note connected to the loans in question. There is no legitimate paperwork, nor any signed documentation, that could support the issuance of these loans under Plaintiff's name.

14. The loans remained completely hidden from Plaintiff's knowledge for over three decades. At no point did Plaintiff receive billing notices, deferment paperwork, or any attempt at collecting from either loan, indicating that he was never properly entered into their systems as a borrower.

15. Plaintiff has always maintained excellent financial discipline. Upon reviewing his credit report, he was devastated to find these two delinquent student loans standing in stark contrast to his otherwise unblemished credit history, which is characterized by accounts in good standing and exceptional payment performance across the board.

16. As a result of these Fraudulent Loans, Plaintiff's credit score has been materially damaged, impacting his ability to maintain financial stability, access credit, and engage in routine life activities that require a clean financial record.

17. In May 2025, Plaintiff made a shocking discovery while reviewing his credit report: two student loan accounts, both listed as open and in collection, appeared under his name, with outstanding balances of $4,391 and $ 4,549, respectively. These accounts were identified as:

   a) US DEPT OF ED / GSL / ATL – Account No. 650060**** – Balance: $4,391
   b) US DEPT OF ED / GSL / ATL – Account No. 650060**** – Balance: $4,549

18. Plaintiff was stunned, as he had never applied for or received any student loans in his life. These debts, tied to NYU, an institution Plaintiff has never had any relationship with, had never been disclosed to him and were entirely fraudulent.

19. On May 21, 2025, Plaintiff filed an official Identity Theft Report with the Federal Trade Commission, under Report No. 187692320, specifically naming the above student loan accounts as fraudulent.

20. In the report, Plaintiff affirmed that Fraudulent Loans were opened without his knowledge, authorization, or consent. He made clear that he had received no benefit from the Fraudulent Loans and had never been affiliated with NYU in any educational, financial, or personal capacity.

21. The Fraudulent Loans have caused significant harm to Plaintiff's financial standing. He has always maintained an excellent credit profile, with all other accounts in good standing or reflecting exceptional payment history. The sudden presence of two high-balance loans in collection has derailed his credit rating and triggered significant emotional and financial distress.

**B.     Plaintiff's Discovery of Fraud and Diligent Efforts to Rectify.**

22. On June 4, 2025, Plaintiff mailed a comprehensive dispute package to all three major CRAs, fulfilling his obligations under the FCRA and demanding immediate removal of the Fraudulent Loans. The dispute package included:

   a. A detailed letter explaining that Plaintiff was a victim of identity theft;
   b. Specific identification of the Fraudulent Loan accounts, including account numbers and balances;
   c. A clear and unequivocal statement that Plaintiff never opened or authorized the accounts and received no benefit from them;
   d. A formal request for fraud investigation and immediate deletion of the Fraudulent Loans from his credit file;
   e. Copies of Plaintiff's New York State Driver License and Social Security Card;

  f. Proof of Plaintiff's current address in the form of a Spectrum Bank Statement; and

  g. A complete copy of the FTC Identity Theft Report (No. 187692320).

23. This package satisfied all statutory notice requirements under 15 U.S.C § 1681c-2 and triggered Equifax's non-discretionary duty to conduct a reasonable investigation and block the disputed Fraudulent Loans.

24. Despite Plaintiff's clear and substantiated claim, supported by government issued ID, proof of address, FTC documentation, and detailed account information, Equifax failed to conduct any reasonable investigation or permanently remove the Fraudulent Loans.

25. Plaintiff has made every reasonable effort to correct this gross misreporting and clear his name. Yet to date, the Fraudulent Loans remain on his credit report, continuing to suppress his credit score, damage his reputation, and interfere with his financial security.

 **C.** **Equifax's Unlawful Conduct and Continued Harm to Plaintiff.**

26. Despite Plaintiff's prompt and diligent efforts to notify the appropriate entities of the identity theft and the clearly fraudulent nature of the student Fraudulent Loans, Equifax failed in its statutory duties under the FCRA, thereby prolonging and exacerbating the harm suffered by Plaintiff.

27. Upon receiving Plaintiff's comprehensive dispute package in June 2025, which included a detailed identity theft report filed with the FTC (Report No. 187692320), along with identification documents, proof of address, and a full explanation of the fraudulent nature of the Fraudulent Loans, Equifax was legally obligated under 15 U.S.C. § 1681i(a) to conduct a reasonable reinvestigation of the disputed information.

28. Equifax failed to conduct any reasonable reinvestigation. Plaintiff provided sufficient documentation to clearly identify the fraudulent nature of the two Fraudulent Loans reported by U.S Department of Education, yet Equifax continued to report both accounts as open

and in collection, despite its legal obligation to verify, correct, or delete inaccurate information following a consumer dispute.

29. Pursuant to 15 U.S.C § 1681c-2(a), Equifax was required to block the reporting of the disputed student loan information within four (4) business days of receiving Plaintiff's complete identity theft documentation. This statutory block was mandatory and non-discretionary once Equifax had received:

    a) A copy of Plaintiff's FTC Identity Theft Report;

    b) A written statement from Plaintiff asserting that the accounts were fraudulent; and,

    c) Proof of Plaintiff's identity and residence;

30. Nonetheless, Equifax failed to block the reporting of the Fraudulent Loans within the statutory timeframe, or at all. The Fraudulent Loans continued to appear on Plaintiff's credit report well beyond the deadline imposed by law, further damaging Plaintiff's creditworthiness and financial credibility.

31. Equifax, also failed to follow reasonable procedures to assure maximum possible accuracy of the information contained in Plaintiff's consumer report, as required by 15 U.S.C. § 1681e(b). By continuing to report plainly fraudulent student loans, accounts for which no promissory note exists, no benefit was received, and which are tied to a school Plaintiff never attended, Equifax failed to meet the baseline standards of accuracy and reliability required under federal law.

32. If Equifax implemented a temporary block of the Fraudulent Loans and subsequently rescinded it, it failed to notify Plaintiff of such a decision as required under 15 U.S.C 15 U.S.C. § 1681c-2(c) and 1681i(a)(5)(B). Plaintiff received no notification of any such reversal or investigation result, further compounding his confusion and distress.

33. As a direct and proximate result of Defendant's willful and negligent violations of the FCRA, Plaintiff has suffered and continues to suffer significant harm.

**D.     Damage Suffered by Plaintiff**

34. <u>Credit Damage</u>: Plaintiff has always maintained excellent credit discipline, with a longstanding history of timely payments and accounts in good standing. The reporting of the Fraudulent Loans – both marked as delinquent and in collection – caused substantial harm to Plaintiff's credit score and overall credit profile. This derogatory reporting stands in stark contrast to Plaintiff's otherwise positive credit history, materially reducing his creditworthiness and financial reputation.

35. <u>Denial of Credit Opportunities</u>: Due to the negative reporting of the Fraudulent Loans, Plaintiff has been placed at risk of denial or unfavorable terms on credit applications, including loans, mortgages, and other essential financial products. Plaintiff's ability to secure credit on fair and reasonable terms has been compromised, directly interfering with his financial stability and planning.

36. <u>Emotional Distress</u>: Plaintiff has experienced substantial stress, anxiety, and emotional turmoil as a result of Equifax's ongoing failure to correct the fraudulent reporting. Discovering fraudulent debts tied to an institution he never attended, and learning they had been hidden for decades, caused Plaintiff significant shock and distress. The continued presence of these false accounts has created ongoing worry about his financial security and personal reputation.

37. <u>Time and Resources Spent</u>: Plaintiff has expended considerable time, effort, and resources attempting to correct Equifax's errors. Plaintiff has incurred and will continue to incur financial costs, including costs for obtaining credit reports, certified mailing, and attorneys' fees and litigation costs to investigate and rectify Defendant's errors to protect himself. Plaintiff has

also invested much time in resolving this matter, including sending out disputes, providing government-issued identification, proof of residence, and filling out an FTC Identity Theft Report. All these actions were necessary only because of Defendant's unlawful inaction.

38. <u>Statutory and Actual Damages</u>: Plaintiff is entitled to statutory damages under the FCRA for Defendant's willful violations, in addition to actual damages resulting from credit harm, reputational injury, and emotional distress. Plaintiff has also incurred attorneys' fees and costs as a result of Defendant's unlawful conduct.

39. Accordingly, Plaintiff seeks recovery for all, actual, statutory, and punitive damages available under law, together with costs and attorney's fees, to redress the injuries caused by Defendant's misconduct.

## CAUSES OF ACTION

**COUNT I:**
**Willful Noncompliance With The FCRA**
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

40. Plaintiff incorporates by reference each of the preceding paragraphs.

41. Defendant is a "consumer reporting agency" as defined by and subject to the FCRA, 15 U.S.C § 1681a(f).

42. Following Plaintiff's mailing of his dispute package, in June 2025, Defendant received Plaintiff's Notice of Dispute concerning the inaccurate information related to the Fraudulent Loans appearing on his consumer report.

43. Pursuant to 15 U.S.C. § 1681i(a), upon receipt of Plaintiff's dispute, Equifax was required to conduct a reasonable reinvestigation to determine the accuracy of the disputed information and record the current status of the disputed information, or delete the item from the file, within thirty (30) days of receiving the dispute.

44. Equifax failed to conduct a reasonable reinvestigation of Plaintiff's dispute. A reasonable reinvestigation would have included, at a minimum: (a) thoroughly reviewing all relevant information and documentation submitted by Plaintiff with his dispute, including his sworn statement, proof of identity, and the FTC Identity Theft Report; (b) promptly notifying the U.S Department of Education of the dispute and providing it with all relevant information regarding the dispute received from Plaintiff; and (c) requesting from the U.S Department of Education actual verifying documentation, such as the original loan applications, promissory notes, or any other instrument bearing Plaintiff0s signature or otherwise evidencing his liability for the Fraudulent Loans.

45. Equifax failed to review and consider all relevant information submitted by Plaintiff in connection with his dispute.

46. Equifax's failure to delete or correct the inaccurate information, or to accurately record the status of the disputed information concerning the Fraudulent Loans, as evidenced by its continued reporting of the Fraudulent Loans on its consumer reports dated May 5, 2025 and July 12, 2025, demonstrates its failure to conduct a reasonable reinvestigation. The continued appearance of these delinquent Fraudulent Loans – despite Plaintiff's submission of an FTC Identity Theft Report, proof of identity, and detailed dispute package – further underscores Equifax's failure to comply with its statutory obligations under the FCRA.

47. Equifax's conduct, in failing to perform a reasonable reinvestigation after receiving Plaintiff's detailed dispute and compelling evidence of identity theft, was willful. Equifax acted with knowledge of its statutory duties or in reckless disregard of those duties and Plaintiff's rights.

48. As a direct and proximate result of Defendant's willful violations of the FCRA, Plaintiff has suffered actual damages and is entitled to recover actual damages, statutory damages, punitive damages, and his reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT II:
### Negligent Noncompliance With The FCRA
### (Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)

49. Plaintiff incorporates by reference each of the preceding paragraphs.

50. Equifax's conduct constituted negligent noncompliance with its duty to conduct a reasonable reinvestigation of the disputed information under 15 U.S.C. § 1681i(a).

51. Equifax failed to exercise reasonable care in its reinvestigation process concerning Plaintiff's dispute of the Fraudulent Loans.

52. As a direct a proximate result of Equifax's negligent violations of the FCRA, Plaintiff has suffered actual damages and is entitled to recover such actual damages, along with his reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o.

## COUNT III:
### Willful Noncompliance With The FCRA
### (Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))

53. Plaintiff incorporates by reference each of the preceding paragraphs.

54. Pursuant to 15 U.S.C. § 1681e(b), whenever a CRA prepares a consumer report, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

55. Equifax, when it prepared consumer reports concerning Plaintiff, including but not limited to those reflected in reports dated May 5, 2025 and July 12, 2025, failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

56. The continued reporting of the Fraudulent Loans, which was the result of identity theft and not Plaintiff's obligation, and the reporting of internally inconsistent information regarding said loan accounts, demonstrates Equifax's failure to adhere to this statutory mandate.

57. Reasonable procedures would include, inter alia, robust mechanisms to flag, investigate and resolve accounts identified in FTC Identity Theft Reports and detailed consumer disputes, and to reconcile or correct contradictory information received from the U.S Department of Education or generated with it owns systems.

58. Defendant's conduct in failing to establish or follow such reasonable procedures was willful, representing a knowing failure to comply with its statutory duties or a reckless disregard for the accuracy of the information they compile and disseminate about consumers like Plaintiff.

59. As a direct and proximate result of Equifax's willful violations of the FCRA, Plaintiff has suffered actual damages and is entitled to recover actual damages, statutory damages, punitive damages, and his reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

**COUNT IV:**
**Negligent Noncompliance With The FCRA**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

60. Plaintiff incorporates by reference each of the preceding paragraphs.

61. Equifax's conduct constituted negligent noncompliance with its duty to follow reasonable procedures to assure maximum possible accuracy of information in their consumer reports under 15 U.S.C. § 1681e(b).

62. Equifax failed to exercise reasonable care in its consumer report preparation and accuracy assurance processes.

63. As a direct and proximate result of Equifax's negligent violations of the FCCRA, Plaintiff has suffered actual damages and is entitled to recover such actual damages, along with his reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o.

**COUNT V:**
**Willful Noncompliance With The FCRA**
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

64. Plaintiff incorporates by reference each of the preceding paragraphs.

65. Pursuant to 15 U.S.C. § 1681c-2(a), a consumer reporting agency must block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, no later that four (4) business days after the date of receipt by such agency of: (1) appropriate proof of the identity if the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information does not relate to any transaction by the consumer.

66. Plaintiff provided Equifax with all necessary items for an identity theft block under 15 U.S.C. § 1681c-2(a) via his comprehensive submission mailed on June 4, 2025.

67. Equifax's willfully failed to timely block the reporting of the information related to the Fraudulent Loans within four business fays of its receipt of Plaintiff's complete request and documentation. Alternative, if Equifax did implement a block, they impermissibly and willfully rescinded such block without proper notification to Plaintiff or a valid basis, as the Fraudulent Account information continued to appear on Plaintiff's consumer reports issued by Equifax in May and July 2025.

68. Equifax failure to block, or their improper rescission of a block, was willful, demonstrating a knowing or reckless disregard for their obligations under 15 U.S.C. § 1681c-2.

69. As a direct and proximate result of Equifax's willful violations of the FCRA, Plaintiff has suffered actual damages and is entitled to recover actual damages, statutory damages, punitive damages, and his reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

## COUNT VI:
### Negligent Noncompliance With The FCRA
### (Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)

70. Plaintiff incorporates by reference each of the preceding paragraphs.

71. Equifax's conduct, as describes above, constitute negligent noncompliance with their duties to block the reporting of information resulting from identity theft under 15 U.S.C. § 1681c-2.

72. Defendant failed to exercise reasonable care in implementing or maintaining the required block of information related to the Fraudulent Loans.

73. As a direct and proximate result of Equifax's negligent violations of the FCRA, Plaintiff has suffered actual damages and is entitled to recover such actual damages, along with his reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant for the following:

I. Actual damages in an amount to be fully determined at trial, including but not limited to compensation for credit denials, damage to creditworthiness and reputation, financial burden, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1), and 1640(a);

II. Statutory damages in an amount ranging from $100 to $1,000 for each willful violation of the FCRA, as permitted under 15 U.S.C. § 1681n(a)(1)(A);

III. Punitive damages in an amount to be determined at trial as may be allowed under 15 U.S.C. § 1681n(a)(2) for Defendant's willful and reckless violations of the FCRA;

IV. Plaintiff's reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2), and 1640(a)(3);

V. Equitable relief, including but not limited to an order directing Defendant to permanently delete all adverse, and inaccurate information related to the Fraudulent Loans from Plaintiff's credit files and to cease any further reporting of such information to any third party.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York
August 28, 2025

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Sung Yong Kim

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com